UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN BEDWELL, and individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HAMPTON, Trustee of the Hampton Family Bypass Trust; et al.,<br><br>Defendants. | Case No.:  22cv138-LL-BGS<br><br>**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT [ECF No. 26];**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS [ECF No. 28]** |

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendants John Hampton and Welcome Back Foundation. ECF No. 26. Upon consideration of the pleadings, the Motion, and Defendants' lack of appearance in this case or opposition to the Motion, the Motion for Default Judgment is **GRANTED IN PART**. Also before the Court is Plaintiff's Motion for Attorneys' Fees and Costs. ECF No. 28. For the reasons stated herein Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART AND DENIED IN PART**.

/ / /

/ / /

## I.  Background

On July 13, 2022, Plaintiff filed the operative Complaint in this case on behalf of himself as a person with a disability to enforce the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and California Civil Code §§ 51-53 (the "Unruh Act."). ECF No. 11. Plaintiff alleges that on or about October 2021 and November 2021, he attempted to patronize Defendants' business, but encountered difficulties including parking, signage, entryway and paths of travel. *Id.* at ¶¶ 21-32. These barriers denied Plaintiff "full and equal access, and caused him difficulty, humiliation, and/or frustration." *Id.* at ¶ 23.

On July 1, 2022, the Court issued an Order sua sponte declining supplemental jurisdiction over Plaintiff's state law claims, thereby dismissing Plaintiff's state law claims under the Unruh Act. ECF No. 10. On January 3, 2023, the Court denied Plaintiff's Motion for Reconsideration of the dismissal of Plaintiff's state law claims. ECF No. 19. Accordingly, the only claim remaining under Plaintiff's operative Complaint is for violation of the ADA.

The docket reflects that Defendants were served with a copy of the summons and Complaint on November 3, 2022 and November 4, 2022. ECF Nos. 12, 13. Despite being properly served, Defendants failed to timely file an answer. On January 4, 2023, Plaintiff requested entry of default against Defendant John Hampton, which the Clerk granted on January 5, 2023. ECF Nos. 20, 22. On January 5, 2023, Plaintiff requested entry of default against Defendant Welcome Back Foundation, which the Clerk granted on January 6, 2023. ECF Nos. 23, 25.

On February 1, 2023, Plaintiff moved for default judgment against Defendants John Hampton and Welcome Back Foundation. ECF No. 26. Plaintiff seeks injunctive relief and attorneys' fees and costs under the ADA and the Unruh Civil Rights Act. *Id.* Plaintiff also seeks "damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense." ECF No. 26-1 at 11, 21. Plaintiff has also submitted in support of the Motion for Default Judgment a Motion for Attorneys'

Fees and Costs. ECF No. 28.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk of the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). Entry of default judgment is within the trial court's discretion. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The Ninth Circuit has set forth seven factors that a court should consider when evaluating a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72. Additionally, in determining the merits of a motion for default judgment, the well-pleaded factual allegations are taken as true, except as to allegations regarding the amount of damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

## III. Application of Default Judgment Factors under *Eitel*

In this action, the *Eitel* factors weigh in favor of entering default judgment against Defendants. However, the Court, in its discretion, reduces the amount of attorneys' fees and costs sought by Plaintiff for the reasons set forth below. Additionally, the Court **DENIES** Plaintiff's request for a "statutory penalty assessment of $12,000" under the Unruh Civil Right Act because the Court already declined supplemental jurisdiction over the state law claim.

### a. Possibility of Prejudice to Plaintiff

If denial of default judgment will likely leave plaintiff without recourse for recovery, such potential prejudice to plaintiff favors granting default. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). Here, Plaintiff contends that the architectural barriers resulting from Defendants' failure to comply with the ADA constitutes

discrimination and denial of equal access. Defendants have not appeared and have refused to remedy the barriers to access. Plaintiff has no other means to obtain relief and will likely suffer prejudice without the grant of default judgment.

### b. Merits of Substantive Claim/Sufficiency of the Complaint

"[U]pon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The court must examine the complaint to determine whether plaintiff adequately pled a claim for relief. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). An adequately pled complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### i. ADA Claim

In order to establish a discrimination claim under Title III of the ADA, plaintiff must show that: (1) he is a qualified individual with a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation[1]; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). In order to succeed on an ADA claim of discrimination, the Plaintiff must also prove that the defendant failed to (a) remove architectural barriers, and (b) such removal was readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv) (noting that discrimination under Title III includes "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable."); *see also Vogel v. Rite Aid. Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. Jan. 17, 2014) (abrogated on other grounds). Taking the allegations of the complaint

---

[1] The types of private entities that are considered "public accommodations" include hotels, restaurants, theaters, places of exhibition or entertainment, auditoriums, places of public gathering, stores, professional offices, terminals, places of recreation, schools, care centers and places of exercise and recreation. 42 U.S.C. § 12181(7).

as true, Plaintiff has shown the elements have been met.

Here, Plaintiff alleges that he is paralyzed and needs a wheelchair or walker for mobility. Bedwell Decl. at ¶ 3; FAC at ¶ 1. As a result, Plaintiff is "disabled" within the meaning of the ADA. *See* 42 U.S.C. § 12101(1)(A). Second, it is alleged that Defendant John Hampton, Trustee of the Hampton Family Bypass Trust, owned the Property that Plaintiff alleges he was denied public accommodations because of his disability. FAC at ¶ 2. Further, Plaintiff alleges that Defendant Welcome Back Foundation "is/was a lessee of the Property, owns/owned the business named 'Do-Gooder Thrift Shop,' and has/had control over its business at all relevant times." *Id.* at ¶ 4. Further, it is alleged that at this location Defendants operate an accommodation for the public. *Id.* at ¶ 5. Thus, Plaintiff has demonstrated that Defendants' facility, is an establishment that qualifies as a place of public accommodation. *See* 42 U.S.C. § 12181(7)(B); FAC ¶¶ 4, 5. Accordingly, the first two requirements are satisfied.

Plaintiff has also established that he encountered architectural barriers that worked to discriminate against him on account of his physical disability. Bedwell Decl. at ¶ 6; *see also* FAC at ¶ 14-24. Specifically, Plaintiff alleges that he encountered "barriers related to parking, signage, entryways, and paths of travel."[2] FAC at ¶ 20; Bedwell Decl. at ¶ 6. Plaintiff Bedwell states in his declaration that he encountered these architectural barriers and they interfered with and denied him the ability to use a public place of accommodation and business establishment. FAC at ¶ 16. Plaintiff further notes that the barriers deter him from patronizing the Property, but he intends to return. *Id.* at ¶ 27. Accounting for the facts alleged in the Complaint, Plaintiff has satisfied his burden of demonstrating the existence of architectural barriers at Defendants' Property.

With respect to the removal of the barriers, Plaintiff asserts that Defendants can

---

[2] The FAC also includes additional barriers, conditions and/or violations that Plaintiff was informed by an investigator remain at the Property for mobility-impaired users like him. FAC at ¶ 25.

"remove these barriers without much expense or difficulty" and that their removal is "readily achievable." *Id.* at ¶ 29. These allegations are sufficient to satisfy Plaintiff's burden on this issue. *See Vogel*, 992 F. Supp. 2d at 1011.

Accordingly, taking Plaintiff's allegations as true, the Court finds that Plaintiff has established a claim for discrimination under Title III of the ADA.

### ii. Unruh Act Claim

The Court has declined supplemental jurisdiction over Plaintiff's state law claims, thereby dismissing Plaintiff's state law claims under the Unruh Act. ECF Nos. 10, 19. Notwithstanding this, Plaintiff, in the Motion for Default Judgment, seeks a "statutory penalty assessment of $12,000" under the Unruh Civil Rights Act. Plaintiff's request for a "statutory penalty assessment of $12,000" under the Unruh Civil Right Act is **DENIED** because the Court has already declined supplemental jurisdiction over the state law claims.

Even though the Court **DENIES** Plaintiff's request for statutory fees on the Unruh Act claim, the Court concludes that the allegations in the Complaint sufficiently allege that Defendants violated the ADA. Accordingly, the Court concludes that Plaintiff has adequately pled a claim for relief and finds this factor weighs in favor of entering default judgment against Defendants.

### c. The Sum of Money at Stake

Courts "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1176. The Court has already **DENIED** Plaintiff's request for a statutory penalty in connection with the Unruh Act Claim. In connection with Plaintiff's ADA claim, Plaintiff seeks injunctive relief and attorneys' fees and costs. As discussed in more detail below, the Court has exercised its discretion to reduce the amount of attorneys' fees and costs sought by Plaintiff. However, on balance, the Court finds that this factor also weighs in favor of entry of default judgment.

### d. The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all well-pleaded facts in the complaint are taken as true,

except those relating to damages. *Televideo v. Heidenthal*, 826 F. 2d 915, 917-18 (9th Cir. 1987); *Geddes*, 559 F.2d at 560. Since Plaintiff has supported his factual allegations with ample evidence, and "defendant has made no attempt to challenge the accuracy of the allegations in the complaint," no factual dispute precludes entry of default judgment. *Landstar*, 725 F. Supp. 2d at 921-22. Therefore, this factor weighs in favor of entry of default.

### e. Whether the Default was Due to Excusable Neglect

Defendants were properly served with the summons and Complaint. ECF Nos. 12, 13. Therefore, the default is not due to excusable neglect. *See, e.g., Craigslist, Inc. v. Kerbel,* No. 11-3309, 2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) (defendant's default was unlikely due to excusable neglect considering fact that "Plaintiff's served not only the summons and complaint but also the request for entry of default on Defendant but still received no response"). Accordingly, this factor favors default judgment.

### f. The Strong Policy Underlying the Federal Rules of Civil Procedure

"Defendant's failure to answer Plaintiff['s] complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendant has failed to answer or otherwise responds to the operative Complaint, but this does not preclude the Court from entering default judgment against it. *Id.*

In light of the above, Plaintiff's Motion for Default Judgment is **GRANTED IN PART**. The Motion for Default Judgment is **GRANTED**, but Plaintiff's request for statutory fees under the Unruh Act is **DENIED**.

## IV. Award to Plaintiff

Plaintiff asks for statutory damages for the Unruh Act claim, injunctive relief for the ADA claim, and attorneys' fees and costs. Each request will be discussed in turn below.

### a. Damages

For the reasons already stated in this Order, Plaintiff's request for statutory damages under the Unruh Act is **DENIED.**

/ / /

### b. Injunctive Relief

Plaintiff asks for injunctive relief under the ADA. Specifically, Plaintiff requests that Defendants comply with the Americans with Disabilities Act to remove the existing access violations at the Property. FAC at ¶ 50, Prayer for Relief. Plaintiff is entitled to the injunctive relief compelling Defendants to remove the barriers at the Property so that the facility is readily accessible to and usable by individuals with disabilities. *See Vogel*, 992 F. Supp. 2d at 1015 ("[I]njunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and the removal of the barriers is readily achievable."); *see also Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 850 (N.D. Cal. Oct. 5, 2011). Accordingly, Plaintiff's request for injunctive relief under the ADA is **GRANTED**.

### c. Attorneys' Fees and Costs

The Court's final task is to determine an award of attorneys' fees and costs. Plaintiff filed a Motion for Attorneys' Fees (ECF No. 28) in which Plaintiff seeks attorneys' fees in the amount of $13,021, covering 30.4 hours of work, and costs in the amount of $1,057.14, for a total award of $14,078.14. ECF No. 28-1 at 10, 15, 16; *see also* Hakimi Decl. ¶ 10. Pursuant to 42 U.S.C. § 12205 a plaintiff who prevails on claims brought under the ADA may recover attorney's fees and costs as determined by the court. The fee award is calculated using the lodestar method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1161 (9th Cir. 2018). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (citing *McGrath v. Cty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Further, the Ninth Circuit has made clear that Plaintiffs requesting attorneys' fees must demonstrate that the hourly rates requested are reasonable vis-à-vis the rates charged in "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013) (quoting *Prison*

*Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)); *see also Jordan v. Multnomah Cnty.,* 815 F.2d 1258, 1261-63 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.").

Here, for the reasons set forth below, the Court finds that Plaintiff has not met his burden to recover the full sum of attorneys' fees sought at the proposed hourly rates. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d at 1160 ("In a case in which a defendant fails to appear or otherwise defend itself, the burden of scrutinizing an attorney's fee request – like other burdens – necessarily shifts to the court."). The amount of an attorneys' fees award is within the wide discretion of the trial court and will not be disturbed absent abuse of discretion. *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979).

Plaintiff's request for attorneys' fees consists of $2,475.00 for Anoush Hakimi (5 hours at $495 per hour), $4,603.50 for Peter Shahriari (9.3 hours at $495 per hour), and $5,312.50 for Cody Cooper (12.5 hours at $425 per hour). *See* Declaration of Anoush Hakimi in Support of Plaintiff's Motion for Attorneys' Fees ("Hakimi Decl.," ECF No. 28-2) ¶¶ 10-15; *see also* Billing Statement at 28-4. Additionally, Plaintiff seeks fees in the amount of $437.50 for Sharon Kawas, a paralegal (2.5 hours at $175 per hour), and $192.50 Martin Hernandez, a case manager (1.1 hours at $175 per hour). *Id.* These rates are supported by the declaration of Mr. Hakimi, which details each person's experience. *See* Hakimi Decl. Plaintiff also relies on the Real Rate Report to justify his requested rates. *See id.* at ¶ 16; *see also* ECF No. 28-5. Plaintiff contends that his requested rates fall below the ranges the Real Estate Report suggests for partners and associates in Los Angeles. Mot. for Attorneys' Fees at 13.

### i. Hourly Rate

To determine the reasonable hourly rate, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)

(quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). In this case, the relevant community is the Southern District of California because it is "the forum in which the district court sits." *Id.* The burden is on the party requesting attorney's fees to "produce satisfactory evidence." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Evidence that the Court should consider includes "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Blum*, 465 U.S. at 895 n.11.

Plaintiff's counsel argue that their requested rates are reasonable because the rates are consistent with approved hourly rates for similar ADA cases in the Central District of California. Mot. for Attorneys' Fees at 11-13. The Court disagrees that these rates are reasonable in the present case for two reasons: (1) counsel base their requested rate on the prevailing rate in the Central District of California, which is not the relevant community in this action and has a notably higher prevailing rate than the Southern District of California; and (2) counsel's requested rates in fact exceed the prevailing fees for similar ADA cases in both the Central District of California and the Southern District of California.

First, Plaintiff's reliance on rates in the Central District of California is unfounded. *Id.* at 12-13; Here, the relevant community is the Southern District of California, where attorneys do not command the same substantial rates as in the Central District. *Camacho*, 523 F.3d at 979. Plaintiff includes the 2018 Wolters Kluwer Real Rate Report as an exhibit to his Motion and states that the report is often referenced by federal courts in the Central District of California in connection with attorneys' fee motions. Hakimi Decl. ¶ 16; *see* Mot. for Attorneys' Fees, Ex. 2 (ECF No. 28-5). Plaintiff cites to median hourly rates for attorneys in Los Angeles, California, to justify his requested fees. *See* Mot. for Attorneys' Fees at 13. However, the Real Rate Report evidences that rates in Los Angeles are significantly higher than rates in San Diego, California. Mot. for Attorneys' Fees, Ex. 2 at 14, 17. The Real Rate Report notes that the median hourly rate in Los Angeles is $650.00

for a litigation partner and $510.00 for an associate, while the median hourly rates in San Diego for a litigation partner and associate are $370.00 and $195.00, respectively. *Id.* As this Court sits in San Diego, the Court will only consider the median hourly rates for San Diego attorneys from the Real Rate Report. *See Camacho*, 523 F.3d at 979.

Moreover, the rates of counsel for Plaintiff have often been reduced in the Central District of California for prior, analogous ADA cases. In January 2022, a judge in the Central District of California reduced Mr. Hakimi and Shahriari's rates from $495.00 to $375.00 and Ms. Steven's rate from $425.00 to $300.00. *Pritchett v. Slauson Gas Station, LLC*, 2022 WL 319989 at *3 (C.D. Cal. Jan. 10, 2022) ("In fact, several courts in the Central District of California have substantially reduced the requested rates of these attorneys and have affixed a $300-$375 blended rate that is commensurate with the level of complexity in these run-of-the-mill ADA cases.") (citations omitted). Likewise, another judge in the Central District of California found that a $300.00 blended hourly rate was more reasonable for Mr. Hakimi, Mr. Shahriari, and Ms. Steven in a similar ADA case. *Machowski v. Jacmar Partners III*, 2021 WL 2980223 at *2 (C.D. Cal. May 27, 2021) ("While counsel asserts that both Mr. Hakimi and Mr. Shahriari have 'extensive experience and knowledge in the prosecution of disability access cases,' much of this experience was not needed here as Defendant has not answered and there was no significant discovery, motion practice, or hearing in this case.").

As in the *Machowski* case, Defendant did not appear in this case, so motion practice was limited. It also appears that the facts in this case are not unique from the many other cases that Mr. Hakimi and his law firm have filed in the Southern and Central Districts. Notably, the issues in the instant case are not novel or complex, and Mr. Hakimi and his law firm have utilized virtually identical complaints in these actions. Given the boilerplate nature of the filings, the case's lack of complexity, and the Court's knowledge of the prevailing market rate in this District, the Court finds that Mr. Hakimi, Mr. Shahriari, and Mr. Cooper are entitled to a blended rate of $300.00 per hour in this litigation. *See id.*
/ / /

### ii. Hours Claimed

Plaintiff's counsel submitted an affidavit with an itemized billing statement providing a breakdown of the 26.8 hours that the three attorneys assert to have expended on this case. *See* Hakimi Decl.; Billing Statement. Plaintiff's counsel also seeks 3.6 hours for time spent by the paralegal and case manager on this matter. *Id.* "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009).

As an initial matter, the Court finds that five different people billing on this type of routine ADA case, which lacks complexity, is excessive. The Court finds it appropriate to strike the 3.6 hours billed by the paralegal and the case manager as that work could have been done by the three attorneys who also billed on this case. Accordingly, the Court declines Plaintiff's request to recover any fees for the time spent by Ms. Kawas and Mr. Hernandez.

Second, the Court finds that the 26.8 hours billed to this matter by the three attorneys is also excessive given the boilerplate nature of the Complaint and the fact that there was no opposition to the motion for default. *See, e.g.*, *Machowski*, 2021 WL 2980223, at *2. In cases involving the same attorneys – Mr. Hakimi and Mr. Shahriari – courts in the Central District have found that "considering how often Plaintiff's counsel files nearly identical complaints and the formulaic nature of the filings," the time spent before filing the complaint should be reduced to only four or five hours." *See Shayler v. 1310 PCH LLC*, No. CV 20-10751 GW (GJSx), 2021 WL 5024393, at *3 (C.D. Cal. Sept. 30, 2021) (reducing Mr. Hakimi and Mr. Shahriari's pre-complaint hours from 9 to 4); *see also Walker v. Gateway Plaza LLC,* No. CV 21-255 GW (SKx), 2021 WL 6103372, at *3 (C.D. Cal. Oct. 13, 2021) (reducing Mr. Hakimi and Mr. Shahriari's pre-complaint hours from 8.6 to 4.6). Given the similarly formulaic nature of this case, the Court will reduce the hours billed before Plaintiff filed his Complaint from 8.7 hours (billed by both Mr. Hakimi and Mr. Shahriari) to 4 hours total. *Shayler*, 2021 WL 5024393, at *3. Additionally, the

Court finds that Mr. Cooper's time billed for "Input[ting] time into Timesolv]" (.8 at a rate of $425) is unnecessary and excessive. Accordingly, the Court strikes Mr. Cooper's entry for his time spent billing his time. Similarly, the Court finds it excessive that Mr. Cooper spent 6.4 hours preparing a motion for default judgment between the dates January 27, 2023 and January 31, 2023, and then after Mr. Hakimi reviewed it, Mr. Cooper spent another .5 hours to "finalize and file motion for default judgment." ECF No. 28-4 at 4. The Court finds this amount of time to prepare a motion for default judgment to be excessive and redundant. Therefore, the Court reduces Mr. Cooper's hours spent on preparing the motion for default judgment 6.9 hours to 4 hours.

With the entries above subtracted and reduced, the Court finds that 15.5 hours of work for this case is reasonable for litigating this case through a successful grant of motion for default judgment. After this reduction, and with the fees at a blended rate of $300.00, the Court awards Plaintiff attorneys' fees in the amount of $4,650.00.

### iii. Costs

Plaintiff seeks costs of $90.00 for an investigator, $402.00 in filing fees, and $565.14 in service costs. *Id.* The Court finds the $402.00 filing fee and the $565.14 service-of-process fee reasonable and recoverable and awards Plaintiff these costs. However, the Court declines to award Plaintiff's $ 90.00 request for the investigative fees. Although some district courts have awarded these costs, *see, e.g.*, *Johnson v. In Suk Jun*, No. 19-CV-06474-BLF, 2020 WL 6507995, at *10 (N.D. Cal. Nov. 5, 2020) (including investigation costs in litigation expenses), Plaintiff has not provided any authority to support the assertion that he is entitled to these costs, *see Langer v. Murad Enterprises, LLC*, 20-cv-34-MMA (BLM), ECF No. 15 at 12 n.3 (S.D. Cal. June 2, 2020) ("Plaintiff fails to provide any authority, nor is the Court aware of any such authority, indicating costs for 'investigator' fees are recoverable."). Therefore, the Court awards Plaintiff $967.14 in costs.

### V. Conclusion

Consistent with the foregoing discussion, Plaintiff's Motion for Default Judgment is

**GRANTED IN PART.** Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART AND DENIED IN PART.** The Court **AWARDS** Plaintiff $5,617.14 in attorneys' fees and costs. It is further **ORDERED** that Clerk of Court shall enter **JUDGMENT** in favor of Plaintiff and against Defendants.

    **IT IS SO ORDERED**.

Dated: April 26, 2023

Honorable Linda Lopez
United States District Judge